## BANK OF ROME *v.* THE VILLAGE OF ROME.

The constitution does not, in terms or by necessary intendment, restrain the legislature from conferring upon municipal authorities the power to subscribe to the stock of a railroad corporation and to raise the necessary funds by taxation.

Whether, in any instance, the power of a municipal corporation to tax, to borrow money, to contract debts or loan its credit, has been sufficiently restricted, is a question for the discretion of the legislature, not reviewable in the courts.

An act which, by its terms, is to take effect immediately, but which confers upon the authorities of a municipality certain powers not to be exercised until such act has been approved by vote of the inhabitants, is constitutional. This is not a delegation of legislative power, within the case of *Barto* v. *Himrod* ( 4 *Seld.*, 483 ).

The submission, by the legislature, to a local constituency of a question affecting their local interests, is to be distinguished from the submission of a question affecting the whole state to the entire body of the electors. *Per* JOHNSON, Ch. J.

Bank of Rome *v.* The Village of Rome.

Appeal from the Supreme Court. The complaint stated that by chapter 283 of 1853, the president and trustees of the village of Rome, a body politic and corporate, were authorized, in behalf of the corporation, to subscribe for and hold stock in a railroad corporation, organized or to be organized for the construction of a railroad from some point on the River St. Lawrence to and terminating within the village of Rome, to an amount not exceeding $150,000. That the trustees were empowered, by said act, to provide for the payment of such stock by corporation bonds for not less than $100 each, to be payable not more than twenty years from their date, and to bear interest not exceeding seven per cent per annum, payable annually or semi-annually, and at such times or places as should be expressed therein. The provisions of the act for the appointment of commissioners to represent the village corporation in respect to the negotiation of the bonds, and that requiring the trustees of the village to collect, in addition to the amount which they might then raise in one year, an annual tax sufficient to pay the interest on all bonds which might be issued, were set out in the complaint. The act further provided:

"§ 8. The board of trustees shall have no power to make such subscription as is authorized in the first section of this act, nor to issue bonds or create any liability under this act, until it has been previously approved by two-thirds of all electors who shall have paid a tax on personal or real estate in said village, whose names shall appear regularly in the last village assessment roll for the year next preceding the one in which the vote is taken."

The ninth section prescribes how the election shall be held, and the votes—"For railroad stock" and "Against railroad stock"—returned. The tenth directs the president and trustees to canvass the vote and file a certificate in the clerk's office of Oneida county, stating the result: "And if

it shall appear from such certificate that this act has been approved and the issue of stock authorized, the president and trustees of said village shall proceed to make subscription and to issue bonds as authorized by this act." The twelfth and last section is: "§ 12. This act shall take effect immediately."

The complaint then sets forth the holding of a special election in the village of Rome, in full compliance with the act, and a canvass of the votes, whereby it appeared that more than two-thirds of the electors specified in the act had cast their votes in favor of approving the same, and of subscribing for railroad stock, and that the trustees made and filed their certificate, showing the approval of the act as required therein. The Ogdensburgh, Clayton and Rome Railroad Company was organized, for the construction of a railroad from within the village of Rome to the River St. Lawrence in the village of Ogdensburgh. The president and trustees of Rome subscribed, in behalf of the village corporation, for $150,000 of its capital stock, and for the purpose of providing for the payment of the subscription, issued its bonds and delivered them to the railroad corporation, who transferred three of them, for $500 each, to the plaintiff. The sum of $105 for the annual interest, due January 1, 1856, remains unpaid, and for this sum was judgment demanded.

The defendant demurred to the complaint on the grounds that the act of 1853, authorizing the subscription and issue of bonds is unconstitutional, first, because it delegates the power of legislation to the voters of the village of Rome; second, because it is not within the power of the legislature to confer upon the officers of a municipal corporation authority to tax the property of its inhabitants for the purpose of building a railroad, a purpose which is not a public one, and is foreign to the nature and attributes of a municipal corporation.

The demurrer was overruled at special term, and upon appeal, this judgment was affirmed at general term in the

fifth district. Final judgment having been perfected for the plaintiff, the defendant appealed to this court.

*Ward Hunt*, for the appellant.

*Francis Kernan*, for the respondent.

JOHNSON, Ch. J. Assuming for the moment that the act of the legislature (*ch.* 283, *Laws of* 1853) under which the obligations in suit were issued, is not void as being an attempt to delegate the legislative power of the state, within the principles settled in *Barto* v. *Himrod* (4 *Seld.*, 483), I shall consider, first, whether any particular provision of the constitution forbids the conferring on a municipal corporation power to take stock in a railroad company, and thereby to incur a debt; and second, whether, in the absence of any such particular provision, any ground exists on which a court is at liberty to pronounce void an act of the legislature conferring such a power.

First. The constitution (*art.* 8, § 9) provides that " It shall be the duty of the legislature to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent abuses in assessments and in contracting debt by such municipal corporations."

Now, from this provision, it is plain that the convention thought there had been and might be abuses in respect to the exercise of the named powers of municipal corporations. They, therefore, enjoined upon the legislature the task of restricting these powers so as to prevent the abuses. But it is manifest from the terms of the provision, that these powers were, in some cases at least, and to some extent, still to exist; for the direction is neither to abrogate existing powers, nor to abstain from creating new ones, but only to restrict them so as to prevent abuses in assessments and con-

tracting debts. Indefinite as is the rule of restriction prescribed by this provision, and ill-suited in its terms to be judicially applied, it is still both salutary and well-suited to be the guide of legislative discretion. It presents to the legislature the general object to be attained, the prevention of abuses in assessments and contracting debts, and the general means of attaining that object, by restrictions on the powers to be conferred on municipal corporations; but it leaves to the discretionary power of that body the determination of what are abuses, and what extent of restriction, on the powers to tax, to lay assessments, to borrow, to contract debts, to loan credit, will prevent such abuses. The legislative judgment is appealed to, and is to be formed while they are deliberating upon the enactment of the law. Each particular case is to be determined on its own circumstances, as to the measure of restriction necessary to secure the end proposed. Restrictions which, as to one municipality, would suffice, as to another might be altogether insufficient. To each case they are to apply a limit of power which will, in their judgment, prevent abuse. If their judgment has been in any particular case erroneous, if the limit which they deemed sufficient has proved not narrow ·enough to exclude abuses, surely their judgment is not to be reviewed and reversed in a court of law. The rule is general, that a discretion committed to one authority is not to be reviewed by another. It holds, in regard to tribunals, even of the most limited power, and it applies at least with equal force when the depositary of the discretion is also the depositary of the legislative power of the state.

I conclude, therefore, that the provision in question does not set forth any rule by which a court can adjudge an act of the legislature to be void. The rule was intended to operate upon the conscience and judgment of the legislature in passing laws, and we must assume that the law in question was enacted by them in view of it, and of all the responsibility which it imposed, and that in the legislative

Bank of Rome *v.* The Village of Rome.

judgment this act did so restrict the powers in question as to prevent abuses.

The provision of the constitution just considered, being the only one which directly relates to the powers of municipal corporations, and that being found not to furnish any ground for declaring void the law in question, I proceed, secondly, to consider whether any other constitutional ground exists for invalidating this law.

A municipal corporation owes its existence to the legislative will, and derives its powers from the same source from which it receives its being    What those powers should be is a question which, when considered by a legislature about to confer them, ought to be determined with reference to the interests and convenience of the persons who are to compose the corporation, and to the public policy of the state.   The constitution does not limit the power of the legislature in terms, and if any limit is to be found by judicial investigation, the inquiries of a court must be directed to the general consideration of what, in their judgment, is wise and expedient.   That this is a line of inquiry which courts cannot pursue, in determining upon the validity of a law, was maintained in *Wynehamer* v. *The People* ( 3 *Kern.*, 378).   Even if a court could properly enter upon this inquiry, no judge would, I think, venture to state a more restrictive rule, than that the powers conferred on a municipal corporation must relate to the public interests of the territory, or body of persons within its limits.   Taking this definition, can a court say that a railroad terminating at a village or city is so foreign to its public interests, and those of its inhabitants, that it is beyond the legislative power to authorize the village or city to become interested in its construction?   The general judgment of men is, we all know, that a railroad so terminating does, or at least may, add to the value of property, promote trade, and contribute to the convenience of the inhabitants of any place.   If, therefore, we were at liberty to judge of this question, we could

not come to the conclusion, that the power to subscribe for stock in this railroad was entirely foreign to and unconnected with the public interests of the village of Rome. The question was decided in Connecticut in 1843 (*Bridgeport* v. *Housatonuc R. R. Co.*, 15 *Conn.*, 475), and in the Supreme Court of this state (*Clarke* v. *Rochester*, 24 *Barb.*, 474), where it received able and elaborate examination.

If power to subscribe for stock could be conferred, it follows, as a matter of course, that power to incur debt for the subscription price, power to give bonds or other evidences of such debt, and power to tax to raise money to pay the debt in case it should be necessary, could also be conferred These are the common and approved modes of evidencing and of paying off municipal liabilities, applicable at the will of the legislature to all municipal responsibilities. That they do not involve any invasion of the right of private property, is clear from the cases of *Thomas* v. *Leland* (24 *Wend.*, 65), and *The People* v. *Mayor of Brooklyn* (4 *Comst.*, 419).

That this kind of legislation may be injudicious, and even worse than that, is not denied, but the consideration of that aspect of the question belongs not to the courts, but to the legislature and the constituents of the legislature.

Another question, that which was assumed in the commencement of this opinion, remains to be considered. In *Burto* v. *Himrod* (4 *Seld.*, 483), the free school law was held to be unconstitutional. That was an act relating to the whole state, and the question was submitted to the people of the whole state, to be determined by their votes, whether or not the act should become a law. It was regarded by the court as an attempt, on the part of the legislature, to escape from the responsibility which the constitution had imposed on them in conferring the power to make laws. They who represented the whole people, undertook to refer back, to the same body they represented, the question how, in the particular case, their duty should be exercised. As

is said by RUGGLES, Ch. J., in that case: "The event on which the act was made to take effect was nothing else than the vote of the people on the identical question which the constitution makes it the duty of the legislature itself to decide." The act now in question differs in substance from the school law in the particulars on which that case turned. The matter involved was one of local interest only. The law, by its terms, was to take effect immediately, but by the eighth section the trustees of the village were not to have power to act under its provisions, in subscribing and issuing bonds, until the law had been approved by two-thirds of the electors who had been tax-payers in the preceding year. By the ninth section, they were to vote "for railroad stock" or "against railroad stock," and by the tenth section, if the requisite approval were had, the trustees were directed to subscribe for stock and issue bonds. The case is, there fore, in substance, only a submission to a vote of the parties interested, of the question whether or not they chose that the municipal corporation should subscribe to the railroad. In other words, the legislature did not compel the village to subscribe but, creating by law the necessary machinery, left it to the tax-payers to determine that matter.

The judgment should be affirmed.

COMSTOCK, DENIO and PRATT, Js., took no part in the aecision; all the other judges concurring,

Judgment affirmed.