PETER O. WILLIAMS et al., Executors, etc., Respondents, v. THE TOWN OF DUANESBURGH, Appellant.

As to whether the prior decisions in this State, holding that the legislature had power, under the Constitution, to authorize municipal corporations to subscribe for and hold stock in railroad corporations, and to issue their bonds in payment therefor were, in effect, overruled by the case of *People* v. *Bachellor* (53 N. Y., 128), *quære* (ANDREWS, FOLGER and RAPALLO, JJ., holding that they were not; CHURCH, Ch. J., and ALLEN, J. holding that they were, and that the power did not exist; MILLER, J. not voting).

Where, however, in pursuance of legislative enactment, municipal bonds have been issued and transferred to purchasers for value, prior to the decision in *People* v. *Bachellor*, they are protected by the earlier decisions, and as far as their validity depends upon the constitutional power of the legislature, will be sustained.

Although the legislature cannot compel a municipal corporation to subscribe for railroad stock and to issue its bonds in payment therefor, yet, where, under a mandatory act, the municipality has voluntarily and without the compulsion of judicial process subscribed for and taken the stock and issued its bonds, the latter are not invalidated by the compulsory character of the act ; it operates as an authority and permission to do the acts, and, having been done, they will be considered as having been done voluntarily (ANDREWS, J.; FOLGER and RAPALLO, JJ., concurring).

In an action upon bonds issued in 1862 by defendant's railroad commissioner to pay for subscriptions to stock of the A. and S. R. R. Co., *held*, that although the bonds were issued without a compliance with the conditions precedent prescribed in the acts authorizing such subscription (chap. 64, Laws of 1856, and acts amendatory thereof), yet that the same were validated by the provision of the act of 1864 (chap. 402, Laws 1864), declaring that when the road of said company shall have been constructed through a town its bonds shall be valid, although such conditions were not complied with (ANDREWS, RAPALLO and FOLGER, JJ., concur, on the ground that the legislature had power thus to vitalize the bonds; CHURCH, Ch. J. and ALLEN, J., while doubting the power, concur, on the ground that, as to the defendant's bonds, the court was concluded by the decision of the Commission of Appeals in *Town of Duanesburgh* v. *Jenkins* [57 N. Y., 177]).

(Argued May 25, 1875; decided May 23, 1876.)

APPEAL from a judgment of the General Term of the Supreme Court, in the third judicial department, affirming a

judgment in favor of plaintiffs, entered upon a decision of the court on trial without a jury. The nature of the action and the facts are set forth sufficiently in the opinion of ANDREWS, J.

*A. P. Parker* for the appellant. The acts of 1863 and 1864, so far as they declared the bonds valid, in spite of the non-consent of the town, are unconstitutional and void. (*People* v. *Batchellor*, 53 N. Y., 128; 2 Redf. on Railways, 434; *Town of Queensbury* v. *Culver*, 19 Wal., 91; *People* v. *Mitchell*, 35 N. Y., 551; *Young* v. *Beardsley*, 11 Paige, 93; *Beekman* v. *Sav. Co.*, 3 id., 45; *Taylor* v. *Porter*, 4 Hill, 140; *Loan Assn.* v. *Topeka*, 20 Wal., 663.)

*Nathaniel C. Moak* for the respondents. A *bona fide* holder of the bonds in suit could recover against defendant, although the statutory requirements to their issue had not been complied with. (*Thompson* v. *Lee County*, 3 Wal., 327; *Mercer Co.* v. *Hackett*, 1 id., 83; *Lee Co.* v. *Rodgers*, 7 id., 181; *Suprs.* v. *Schenck*, 5 id., 772; *Township of Pine Grove* v. *Talcott*, 19 id., 666; *Rice* v. *R. R. Co.*, 1 Black., 386; *Milner* v. *City of Pensacola*, 2 Am. L. T. R., 186; *Bk. of Rome* v. *Village of Rome*, 19 N. Y., 25; *Town of Queensbury* v. *Culver*, 19 Wal., 92; *Comrs. of Knox Co.* v. *Aspinwall*, 21 How. [U. S.], 544; *Gelpecke* v. *City of Dubuque*, 1 Wal., 203; *Meyer* v. *City of Muscatine*, id., 384; *Pendleton Co.* v. *Amy*, 13 id., 304; *Nugent* v. *Suprs.*, 19 id., 241; *City of Lexington* v. *Butler*, 14 id., 282; *Grand Chute Co.* v. *Winegar*, 15 id., 371; *St. Joseph Township* v. *Rogers*, 16 id., 645.) The acts of 1863 and 1864 repealed the condition of the original act requiring the consent of a portion of the tax-payers, and made the affidavits filed conclusive evidence, and rendered the subscription and the bonds legal and valid. (*People* v. *Mitchell*, 35 N. Y., 552; *Ft. Plain Bridge Co.* v. *Smith*, 30 id., 44; *People* v. *Clarke*, 53 Barb., 178; *Portsmouth, etc.* v. *Town of Yellowhead*, 3 Bis., 474; *James* v. *Patten*, 6 N. Y., 9; *Oakley* v. *Aspinwall*, 13 id., 500; *N.*

*Y. T. C.* v. *Schuyler*, 8 Abb., 239; *City of Kenosha* v. *Lamson*, 9 Wal., 478; *Thompson* v. *Lee Co.*, 3 id., 327; *In re Protestant, etc.*, 46 N. Y., 178; *In re Meyer*, 50 id., 504; *Hand* v. *Ballou*, 12 id. 543; *Hickox* v. *Tallman*, 38 Barb., 608; *Forbes* v. *Halsey*, 26 N. Y., 63; *Mass* v. *Mercer*, 15 Barb., 318; *Stocking* v. *Hunt*, 3 Den., 274.)

ANDREWS, J.   This action is brought to recover interest due on certain bonds, issued and delivered in May, 1862, by one Jenkins, railroad commissioner of the town of Duanesburgh, to the Albany and Susquehanna Railroad Company.   The bonds are part of $30,000 of bonds issued by him as commissioner in payment of a subscription of that amount made by the commissioner in the name of the town to the capital stock of the company.   They contain a recital that they are issued by virtue of an act of the legislature of the State of New York, entitled "An act to authorize any town in the counties of Schenectady, Schoharie, Otsego, Delaware, Chenango and Broome to subscribe to the capital stock of the Albany and Susquehanna Railroad Company, passed March 31, 1856, and of the acts amending the same," and the bonds, when delivered, created a valid obligation against the town of Duanesburgh, under the enabling acts referred to, provided those acts were a lawful exercise of legislative power, and the commissioner in issuing the bonds, acted within the authority conferred thereby.

The validity of enabling acts, authorizing town and other municipal corporations to subscribe for stock, and to issue bonds in aid of railroad enterprises in the locality, was first considered by this court in *The Bank of Rome* v. *The Village of Rome* (18 N. Y., 38), and the constitutionality of such legislation was distinctly affirmed.   The question had before that been raised in the Supreme Court, and had been decided both adversely to, and in favor of, the validity of such legislation.   In *Town of Duanesburgh* v. *Jenkins* (57 N. Y., 177), JOHNSON, commissioner, gave an instructive history of the course of judicial decision in the State upon the subject.   The

doctrine of the case of *The Bank of Rome* v. *The Village of Rome* has not only not been impaired by subsequent decisions, but it has been expressly reaffirmed. (*Starin* v. *Genoa*, 23 N. Y., 439; *Gould* v. *Sterling*, 23 id., 456; see *Clark* v. *The City of Rochester*, 28 id., 605.) And in the late case of *The People* v. *Smith* (45 N. Y., 781), which was a *certiorari* to review the proceedings on the application to bond the town of Phelps, in aid of the construction of a railroad, ALLEN, J., who delivered a very able opinion, while in the Supreme Court, in *Clark* v. *The City of Rochester* (13 How., 204), against the validity of municipal bonding acts in aid of railroads, concedes that that view has not received the sanction of the courts.

Cases involving the regularity of proceedings under these enabling acts, have repeatedly been before this court, and while it has uniformly held to a strict construction, and has refused to uphold proceedings under them, unless an exact compliance with the requirements of the statute was shown, it has never assumed to rejudge the question of the constitutional validity of the legislation, upon which the proceedings were founded, although in every case the invalidity of the law would have been a complete and final answer to the claim of authority to issue the bonds. (*People* v. *Smith*, 45 N. Y., 772; *Same* v. *Hurlbert*, 46 id., 110; *Same* v. *Knowles*, 47 id., 415; *Same* v. *Sawyer*, 52 id., 296; *Same* v. *Spencer.*, 55 id., 1; *Same* v. *Smith*, 55 id., 135; *Same* v. *Morgan*, 55 id., 587.)

The decision in *The Bank of Rome* v. *The Village of Rome* was made in 1858, under one of the earliest acts on the subject of municipal bonding in aid of railroad enterprises. After that decision, numerous projects for the construction of railroads in different parts of the State were conceived, which could only be carried out by means of corporate aid extended by the cities and towns through which they were to be constructed. Many of these projected lines of road were of doubtful utility, and many others were in localities where neither population or business warranted the expectation of a profitable traffic. But it was easy in the abnormal condition

of the country during the civil war to induce individuals or communities to engage in hazardous enterprises, and to pledge their means or credit to support them. Legislation to enable cities and towns to pledge their credit in aid of railroads was readily procured and municipal bonding for railroads became a recognized part of the system of railroad construction. These bonds were put upon the market, and were purchased upon the faith of the decision in *The Bank of Rome* v. *The Village of Rome.* The legislature authorized savings banks to invest the savings of their depositors in them, and they were sought for investment, not by capitalists only, but by trustees and persons of limited means, who desired to invest in available securities promising a fixed and certain income. Under these circumstances, the court cannot at this time, without doing the greatest injustice, overrule *The Bank of Rome* v. *The Village of Rome.* The doctrine of *stare decisis* has here a most forcible application. The rule declared in that case has become in the nature of a rule of property. It is doubtless true, that in many cases severe taxation without compensating benefits will be entailed to pay the indebtedness created under the bonding acts. But the loss must fall either upon the community at large, or upon those who have purchased bonds, the issue of which the legislature sanctioned, and the validity of which this court deliberately affirmed. We adhere to the decision made in *The Bank of Rome* v. *The Village of Rome.* The question involved in that case is not now open to controversy in this court.

It is claimed that, conceding the power of the legislature to pass enabling statutes authorizing towns to subscribe for stock or to issue bonds in aid of the construction of railroads the act under which the bonds in question were issued was invalid, for the reason that it did not simply authorize, but *required* the commissioner, when the consent of the taxpayers had been obtained and the proofs filed, to subscribe for the stock of the railroad corporation, and to issue the bonds of the town in payment therefor. The acts relating to town subscriptions in aid of the Albany and Susquehanna

Railroad Company, passed prior to May, 1862 (when the bonds in question were issued) were chapter 64 of the Laws of 1856, chapter 401 of the Laws of 1857, and chapter 384 of the Laws of 1859. Under all the acts, the obtaining of the consent of a proportion of the tax-payers, and the filing of proofs of consent in the town clerk's office, were made conditions precedent to the right of town commissioners to issue the bonds of the town. The act of 1856, as amended in 1857, provided, in substance, that the commissioner, on the consent being obtained and the proof filed, may borrow, on the faith and credit of the town, the sum mentioned in the consents, not exceeding $100,000, and execute bonds therefor. (§ 2.) The third section authorizes the commissioner to dispose of the bonds at not less than par, and invest the proceeds in the stock of the road, and directs that the money shall be used in the construction of the road; and authorizes the commissioner to subscribe for and purchase the stock of the company to the amount for which the tax-payers have consented, not exceeding the sum limited. The act of 1859 provided for a different disposition of the bonds from that contemplated in the act of 1857, and makes such disposition imperative upon the commissioner. The second section is as follows: "Any town now authorized to subscribe to the capital stock of said company, whenever the proofs shall have been filed in the clerk's office, of the consent, etc., in pursuance of an act passed March 31, 1856, as amended April 14, 1857, authorizing a subscription, by the commissioner, in the corporate name of the town, to the capital stock of the company, such subscription *shall be made* by the commissioner, or commissioners, for the amount the tax-payers shall consent to, not exceeding $100,000, in the same manner as individual subscribers; and the said commissioners *are hereby authorized and required* to issue the bonds authorized by said act in payment, at par, of the stock so subscribed, in installments, as required in case of individual subscribers."

In *People* v. *Bachellor* (53 N. Y., 128) this court held that a *mandamus* would not lie to compel a town to issue its

bonds and subscribe for stock in a railroad corporation under a mandatory act of the legislature. In that case the town had not acted; the bonds had not been issued, and no subscription had been made. GROVER, J., in his opinion, considered that an act requiring a town to subscribe for stock in the corporation was equivalent to compelling the town to engage in the business of a common carrier, and thereby subjecting itself to the duties and responsibilities of that relation. He said: "A municipal corporation cannot be compelled to embark in a business of a private character, because its prosecution by it will probably, or certainly, lead to taxation for the capital to be invested, or expenses incurred therein." But I do not understand that case as deciding that the construction of railroads is not a public purpose for which taxation may be justified.

The validity of enabling acts authorizing towns to issue bonds and subscribe for stock in aid of railroads was not questioned. The case of *The Bank of Rome* v. *The Village of Rome* was referred to in the opinion, and distinguished. It was not overruled, and no suggestion was made that it was not well decided. The learned judge in his opinion, after stating the question in the case then under consideration, adds: "This is a different question from that decided by this court in *The Bank of Rome* v. *The Village of Rome*, and in subsequent cases." If, in this case, the bonds of the town of Duanesburgh had not been issued, and no subscription had been made to the stock of the Albany and Susquehanna railroad, and the proceeding was to compel the town to issue its bonds and subscribe for stock, the case of *The People* v. *Bachellor* might have some application. But here the town, by its agent, has issued its bonds and subscribed for and taken the stock of the road. This was done after the passage of the act of 1859, but the town commissioner did not act under the compulsion of judicial process, but voluntarily, under the authority of the act. If the performance by the town, or its agent, of the acts directed to be done, could not be enforced, the statute, nevertheless, operated as an authority

and permission to do the acts contemplated, and, having been done, they must be considered as having been done voluntarily under this permission and authority. The taking of stock in exchange for the bonds of municipal corporations is a mere incident to the primary purpose of enabling acts of this character, and authority to subscribe for stock to the amount of the bonds issued, or to invest the proceeds of the bonds in the stock of the railroad company which the municipality is authorized to aid, may be lawfully conferred. In *The Bank of Rome* v. *The Village of Rome* authority was given to the village by the act in question in that case to subscribe for the stock of the railroad mentioned in the act, and to provide for paying therefor by the issue of corporation bonds. This decision covers the question as to the power of the legislature, in both aspects. For these reasons, I am of opinion that the objection to a recovery, founded upon the mandatory character of the act of 1859, cannot be sustained.

It is claimed that the affidavits filed prior to the issuing of the bonds were defective, and did not show that the requisite number of tax-payers had consented. Proofs were filed in the proper clerk's office, in attempted compliance with the law, which show that consents were obtained, in some form, of a large number of tax-payers to the issue of the bonds; but the affidavits are confused and uncertain, and, while it does not appear that the requisite consents were not obtained, it must, we think, be conceded that the affidavits fail to show affirmatively this fact. It is the doctrine of this court, established in the cases arising under statutes for bonding towns in aid of railroads, that when the right to issue the bonds of the town is made by the statute to depend upon the consent of tax-payers, or other conditions precedent, and the bonds are issued without the conditions having been performed, they are void in whosesoever hands they may be. But the legislature may overlook a defective execution of the power conferred, and, by retroactive legislation, cure defects in the action of municipalities under these statutes. The legislature may, in the first instance, prescribe the conditions upon which

the bonds may be issued. It may designate the agencies through which the municipality shall act, and determine what measure of consent of tax-payers shall be required, and in what form it shall be expressed. It may by subsequent legislation, when there has been a failure to perform conditions precedent, and the bonds have been issued, dispense with such conditions, and ratify and confirm, and make valid and obligatory upon the municipality, bonds issued without such performance — at least, it may do so in cases where the municipality has, through the construction of the road, or by the receipt of the stock of the company in exchange for the bonds, received the benefit which the statute contemplated as the equivalent for the liability it was authorized to incur. The officers authorized under these statutes to issue the bonds, are public agents and the legislature, looking over the whole matter, may, when in its judgment justice requires it, ratify and confirm their acts, which otherwise would be valid. In this case the legislature could originally have authorized the bonds of the town of Duanesburgh to be issued under the precise circumstances existing when they were issued, and if the acts of the commissioner have, by subsequent legislation, been ratified, it is equivalent to an original authority to do what has been done. The authorities as to the legislative power to validate, by subsequent legislation, acts done in assumed execution of a statute authority which has not been strictly followed, are numerous and decisive. (*People* v. *Mitchell*, 35 N. Y., 551; *Town of Duanesburgh* v. *Jenkins, supra; Gelpcke* v. *Dubuque*, 1 *Wal.*, 203; *Thompson* v. *Lee County*, 3 id., 377; *Beloit* v. *Morgan*, 7 id., 619; *St. Joseph Township* v. *Rogers*, 16 id., 663; *Shaw* v. *Norfolk County Railroad Co.*, 5 Gray, 180; Cooley Const. Lim., pp. 371–379, and cases cited.)

By chapter 402 of the Laws of 1864, it was provided as follows: "And when bonds have been issued by the commissioner or commissioners of any town, and the said [Albany and Susquehanna] railroad shall have been constructed through such towns, the bonds shall be valid and binding on said town, without reference to the form or sufficiency of such affidavits

and the principal and interest on the bonds shall be levied, raised and paid in the manner provided in the original act."

This statute applies to the bonds issued by the defendant and operates as full and complete legislative declaration and recognition of their validity. (*People* v. *Mitchell, supra; Town of Duanesburgh* v. *Jenkins, supra.*)

The judgment should be affirmed.

FOLGER, J. I concur in the result reached by ANDREWS, J. ; I do this upon the principle, *stare decisis.* I conceive that the case of *Bank of Rome* v. *Village of Rome* (18 N. Y., 38), and the line of cases following it, have established the law for this State, that the legislature, before the late amendments to the Constitution, had power *to authorize* a municipality to issue its bonds in aid of a railroad corporation, and that thus a rule of property has been set up, which we may not disturb. The case of *The People* v. *Batchellor* (53 N. Y., 128), in the judgment rendered, did not conflict with those cases, as it declared only, that the legislature had not power *to compel* a municipality to do such an act, a distinct question which had not before been passed upon by this court. The opinion of Judge ANDREWS shows that the present case is not affected by *The People* v. *Batchellor.* It also shows that the irregularities of official action in the issuing of the bonds in this case have been remedied by legislative action, which, within the rule laid down by prior decisions in this court, was competent.

ALLEN, J. Before any judicial decision by the courts of the State directly upon the point, I came to the conclusion, and so adjudged in *Clark* v. *City of Rochester* (13 How., 204), for reasons there imperfectly stated, that the legislature had no power under the Constitution to delegate to, or confer upon, municipal corporations the authority to subscribe for and to hold stock in railroad corporations, and to issue their bonds in payment therefor. In the light of experience and the disastrous effects of the exercise of such power, the corruption of public morals and the burthen of taxation now

resting upon municipalities resulting from its exercise, I see no reason to regret the view I then took of such extra munici- pal powers. Notwithstanding the reversal of that judgment and the almost unbroken current of decisions adverse to it, there has at all times been a strong dissent from the views which have prevailed, and if the question were *res nova* it is possible a different result would be reached by the courts. A strong inclination has been manifested, as well by the courts as the people, to retrace the steps taken and turn back, so far as possible, the current of authority. Whenever the people have been permitted to speak as they have done in this State, in Pennsylvania, Ohio and Illinois, and perhaps in other States, the legislatures have been expressly prohibited from delegating such power to municipal corporations. The express prohibi- tion of the exercise of the power at the first opportunity after it was assumed, is some evidence that in committing to the legislature the power to create municipal corporations for the purposes of local government, it was only intended that such powers should be conferred either for the imposition of taxes for the creation of debt, or for any other purpose as directly pertained, and were essential, to the government of a munici- pality as one of the constituent parts of the State government. Judge DILLON, in his work on municipal corporations (page 147), well remarks : "The judgments affirming the existence of the power have generally met with strong judicial dissent and with much professional disapproval, and experience has demonstrated that the exercise of it has been productive of bad results."

The question was first presented to this court in *The Bank of Rome* v. *The Village of Rome* (18 N. Y., 38), in which it was held that there was no constitutional restriction, either in terms or by necessary intendment, upon the power of the legislature, and that it might confer upon municipal author- ities the power to subscribe to the stock of a railroad corpora- tion, and to raise the necessary funds by taxation or upon its credit. Five, only, of the judges concurred in this result; Judges COMSTOCK, DENIO and PRATT, although not in terms

dissenting, withholding their assent by taking no part in the decision. The same case was again before the court (19 N. Y., 20) upon the effect of the certificate of the commissioners as to the performance of a condition precedent to the issuing of the bonds, and it was held, Judges DENIO and GRAY expressing no opinion, that the certificate was conclusive evidence, in behalf of a *bona fide* holder of the bonds, of the facts therein asserted. *Clark* v. *City of Rochester (supra)*, when it came before this court (as reported in 28 N. Y., 605) was decided, so far as the question of legislative power was concerned, upon the authority of *The Bank of Rome* v. *The Village of Rome (supra)*; JOHNSON, J., dissenting; INGRAHAM, J., expressing the opinion that the statute and the contract made in pursuance of it were void, and SELDEN, J., taking no part. Although the doctrine was regarded as settled by *Bank of Rome* v. *Village of Rome*, courts and judges have reluctantly yielded to its authority upon the principle of *stare decisis*, and the number of protestants has always been considerable. In *The People* v. *Batchellor* (53 N. Y., 128), the authorities bearing upon the question of legislative power, and the constitutional right to confer upon municipalities authority, by a loan of their credit, to aid private railroad corporations, were collated and considered. In the judgment pronounced in that case, the court went far toward directly, in terms, overruling the former decisions upon the subject, and made a decided retrograde movement in hostility to the existence of the power claimed. Notwithstanding the apparent and nominal disclaimer of the learned judge, now deceased, by whom the opinion was prepared, and the attempt to distinguish the case from others, the cases which affirm the right of the legislature to confer upon municipal corporations the power referred to were, in effect, overruled. Such is the logical and necessary sequence of the judgment; and there is no ground upon which it and the cases which preceded it can be reconciled or made consistent.

Judge JOHNSON, in his opinion, as one of the Commission of Appeals, in *The Town of Duanesburgh* v. *Jenkins* (57 N.

Y., 177) was entirely right in his assertion, that to admit the competency of the town by its own assent, or the assent of a majority of its tax-payer or electors, with the authority of the legislature to do the acts in question, was fatal to the argument that the legislature could not compel a town to do the same acts. The legislature could not do indirectly, or by conferring authority on subordinate and local governments, that which it could not do directly and by its own act. It could delegate no power which it did not possess itself. The validity of the act in question depends wholly upon the power of the legislature, as the municipality has no inherent power; and, therefore, when this court decided that the legislature could not directly perform the act, or compel the municipality to perform it, it necessarily decided that power could not be conferred upon the municipality by any vote or assent of its members to do the act. I am constrained, therefore, to regard the last decision of this court as authority. It rests upon sound principles, and must be regarded as declaratory of the law. The case of *Weismer* v. *Village of Douglass*\* recently decided by this court, and not as yet reported, in which it was held that bonds issued by the village of Douglass in aid of a private corporation, and by authority of the legislature, were invalid, is to some extent an authority in accordance with the views already expressed as to the validity of the bonds in suit, so far as their validity depends upon the legislative power.

We are at liberty to carry the decision in *People* v. *Batchellor* to its clear, logical results, and apply to loans of credit by municipal corporations since its promulgation the doctrine necessarily involved in the judgment there given. As there was no inherent power in the town of Duanesburgh, as a municipal corporation, to incur the obligation, and the legislature had no power to compel its assumption by the town officials in behalf of the town, or by its own act to impose such extra municipal obligations upon the corporation or the inhabitants of the town, it follows that but for the previous decisions of this court we should be constrained to hold that the bonds

\* 64 N. Y., 91.

were void and the issue of them *ultra vires*, and that they could not be validated by a transfer to a purchaser for value. There could be no *bona fide* holder, as all would take with full knowledge of the want of power in the agents to bind the town. But the bonds in suit had been issued and transferred to the present holders for value before the prior adjudications of the court had been judicially impeached or questioned; and the purchasers took them upon the faith of those decisions, relying upon them as declaratory of the law of the State. If the bonds had been issued since the last decision of this court that would have controlled; but having been issued before, there are cogent reasons for holding, if possible, that they are protected by the prior decisions commencing with *Bank of Rome* v. *Village of Rome* (*supra*). The Supreme Court at Washington has held that courts cannot destroy or affect the validity of obligations incurred pursuant to powers decided by the highest courts of the State to have been constitutionally conferred and before such decisions have been overruled by a different interpretation of the Constitution and the constitutional powers of the legislature. (*Thomson* v. *Lee County*, 3 Wall., 327; *Havemeyer* v. *Iowa County*, 3 id., 294.) Whether it is intended by these decisions to deny, as is implied by the language of the opinions of the learned judges, the constitutional power of a State court to impair the obligation of a contract by a decision promulgated after the making of the contract overruling a prior decision of the same court by which the contract would, by the Constitution and law of the State, as before expounded, have been adjudged valid, or merely that under such circumstances the later judgment would not be followed as a rule of decision in respect to contracts made after the first and before the promulgation of the later, is not material to the case in hand. They are precedents which, under the circumstances, may be followed, for holding that the first decision should govern as to obligations incurred before such decision was impeached, and while it was properly regarded as the true exposition of the Constitution and laws of the State. In no other way can those who

have become the holders for value of bonds which have been issued by municipalities and by authority of the legislature in aid of private corporations be saved from loss.

The validity of the bonds, so far as their validity depends upon the power of the legislature, being assented to for the reasons and upon the authorities stated, the only other questions are whether the conditions precedent and upon which the existence of the authority in the local agents to bind the town by the issue of the bonds had been performed, and as to the effect of the enabling and validating act of 1864. (Laws of 1864, chap. 402.) That the conditions were not complied with, and the necessary consents of the taxable inhabitants procured is, I think, very clearly shown, and but for the acts of the legislature, and especially that of 1864 (*supra*), the plaintiffs would have failed in this action by reason of the want of power in the officers to act. (Dillon on Munic. Corp., 413, and cases cited ; *Marsh* v. *Fulton Co.*, 10 Wall., 676.)

I should have had great difficulty in giving the effect to the act of 1864 claimed for it so as to make the bonds, given for what is manifestly an extra municipal purpose, valid notwithstanding the want of power in the officials to issue them, if the question was an open one at this time. It is not entirely clear to me that the cases relied upon to establish the legislative authority and the force and efficacy of the act to vitalize the bonds, or the principles upon which they rest, are applicable to or decisive of the question. But, in respect to the issue of the bonds of the present defendant, of which those in suit are a part, this court is concluded by *The Town of Duanesburgh* v. *Jenkins* (*supra*), in which the Commission of Appeals, a court of concurrent jurisdiction and equal authority with this court, has decided the precise question after a deliberate examination ; and it would be indecorous, if we were disposed to do so, to review that decision. It must stand not only as the law of the case, but conclusive as to all the bonds of the present defendant issued by the same authority and under the same circumstances.

Without, therefore, considering the question or re-examin

ing the same, or the principles upon which that decision rests, but giving effect to it as an authority binding upon this court, I am willing to affirm the judgment, on the ground that the bonds were valid and obligatory by the act of 1864, notwithstanding the alleged defects in the actual power of the agents to bind the town.

RAPALLO, J., concurs with ANDREWS, J.; FOLGER, J., concurs on grounds stated in memorandum. CHURCH, Ch. J., concurs with ALLEN, J.; MILLER, J., not sitting.

Judgment affirmed.