ORRIN A. HORTON, Respondent, v. THE TOWN OF THOMPSON, Appellant.

Town commissioners appointed under and in pursuance of the act of 1868, (chap. 553, Laws of 1868), authorizing certain towns to issue bonds and take stock in railroad corporations, are in no sense town officers, and do not represent the town; a town, therefore, is not bound by the acts of its commissioners beyond or in contravention of said act and of a consent. given thereunder.

The only warrant for the action of such commissioners is the consent. of the taxable inhabitants required by the act as amended in 1869 (chap. 96, Laws of 1869); bonds issued without such consent are invalid, and it is beyond the power of the Legislature to validate them, and impose them as a debt upon the town.

A consent of a majority of the tax-papers of the town of T. was obtained, which consent stated on its face that it was given in pursuance of the said act of 1868; it authorized the commissioners appointed thereunder to borrow upon the credit of the town a specified sum; the commissioners instead of disposing of the town bonds "for not less than par," and investing the proceeds in the stock of a railroad company, as prescribed by the act, exchanged the bonds executed by them for an equal amount of stock. In an action to recover the amount of two interest coupons

of one of said bonds, *held,* that the consent did not authorize the transaction; and that the bonds were void; also that they were not validated by the act of 1871 (chap. 809, Laws of 1871), purporting to legalize and confirm the acts of said commissioners.

The bonds upon their face referred to, and stated that they were executed under the act of 1868, and recited that they were given "for value received in the stock" of the M. & P. J. Railway Co. *Held,* that as it appeared upon the face of the bond that it was issued in violation of the act and of the consent, plaintiff could not claim as a *bona fide* holder.

Plaintiff was holder of the bond at the time of the passage of the act of 1871 (chap. 809, Laws of 1871.) *Held,* that the bond being void constituted no debt against the town, and the Legislature had no power to impose it as such; that as the bond was not issued in conformity with the consent of the tax-payers, the Legislature could not validate it unless they had the power to authorize the contracting of the debt without any consent or action on the part of the town, and this they had no power to do.

The consent did not specify the railroad company in the stock of which the money was to be invested, as required by the act; *held,* that the consent was fatally defective; but as the consent was sufficiently comprehensive to embrace the road whose stock was subscribed for, and as the Legislature might legally have authorized a consent in that form, this defect was cured by the act of 1871.

It was claimed that the town by accepting and retaining the stock ratified the issue of the bonds and waived any irregularity. By the judgment in an action to which the town, the commissioners and the railroad company were made parties, all of the bonds issued were adjudged void, and the certificates of stock given by the railroad company therefor were directed to be given up and canceled; *held,* 1st, that even if the commissioners still held the stock the town could claim no benefit therefrom; 2d, that as the commissioners were not officers or agents of the town, it was not bound by their acts; 3d, even if they were officers, or if town officers, had acted in the matter, they had no power to contract this debt, save in the manner prescribed by law, and could not by any attempted ratification do that which they had no power to do directly.

*Horton* v. *Town of Thompson* (7 Hun, 452) reversed.

(Argued March 21, 1877; decided January 15, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of plaintiff entered upon the report of a referee. (Reported below, 7 Hun, 452.)

This action was brought upon two interest coupons upon a railroad bond, executed by three commissioners appointed

for defendant, under and in pursuance of the act chapter 553, Laws of 1868.

The referee found in substance, among other things, that a consent was signed by a majority of the tax-payers of the town, which consent referred to and stated that it was given in accordance with said act, and authorized the commissioners to borrow upon the faith and credit of the town the sum of $148,000, and to execute therefor the bonds of the town, " and to do and perform such other acts and things necessary to carry into effect the provisions of the act aforesaid." The consent did not specify any railroad in the stock of which said sum was to be invested. On the 1st of May, 1869, the commissioners, assuming to act as such, executed one hundred and forty-eight bonds of $1,000 each, with coupons attached. It was stated in the bonds that they were issued under and by virtue of said act—which was referred to by its title—and of the act chapter 96, Laws of 1869, amendatory thereof, an it was declared therein that they were issued " for value received in the stock of the Port Jervis Railway Company." Said company was a corporation duly organized to construct a road running through said town. These bonds were delivered by the commissioners to the railroad company in parcels, and in exchange therefor the commissioners received a certificate for an equal amount of the capital stock of said company, for which they had subscribed, claiming to act for said town, which certificates the commissioners have not surrendered to said railway company.

On the 2d day of July, 1869, an action was commenced in the Supreme Court by the Attorney-General, on behalf of the people on the relation of Chas. T. Kilbourne and other tax-payers of the town against the town commissioners; Messrs. Colt & Crowley, who had contracted to construct the said railroad in consideration of the said bonds; the Monticello & Port Jervis R. R. Co.; and the town of Thompson defendants. The complaint in said action was filed in the Sullivan county clerk's office on that day. Such proceedings were had in the said action; that on the 21st

day of November, 1872, a judgment was obtained therein and duly entered, by which, among other things, it was adjudged and decreed that each and all of the said bonds were issued by the said commissioners without authority in law therefor, and were void and of no effect; also that the certificates of stock issued by the said railroad company in exchange for the said bonds, should be delivered up and canceled; from which said judgment no appeal has been taken. The bond and coupons in question were purchased February 1st, 1870, by the plaintiff for full value.

Further facts appear in the opinion.

*T. F. Bush,* for appellant. The commissioners acted entirely without power in issuing the bonds, and they are, therefore, void and of no effect. (*Sheb. Co.* v. *Parker,* 3 Wall., 96; *People* v. *Benedict,* General Term, third department, May, 1870; *People* v. *Van Valkenburgh,* 63 Barb., 109; *People* v. *Hughett,* 5 Lans., 97; *People* v. *Franklin,* id., 135; *People* v. *Ad. Co.,* 57 Barb., 661; *People* v. *Spencer,* 55 N. Y., 1; *People* v. *Smith,* id., 137; *People* v. *Knowles,* 47 id., 415.) The bonds were illegally issued in consideration for stock in direct violation of the statute. (*State of Illinois* v. *Dellafield,* 8 Paige, 528; 2 Hill, 158; 26 Wend., 192, 221; 2 J. Ch., 244; *Starrin* v. *Town of Genoa,* 23 N. Y., 439, 459.) No one could be protected as a *bona fide* holder of the bonds; the want of capacity in the makers of them rendered them void. Negotiability could not impart vitality to them. (Floyd Acceptances, 7 Wall., 675; *Marsh* v. *Fult. Co.,* 10 id., 683; *Mayor* v. *Ray,* 19 id., 478; *Mech. Bk.* v. *N. Y. & N. H. R. R. Co.,* 13 N. Y., 632; *Dellafield* v. *State of Illinois,* 26 Wend., 222; *F. & M. Bk.* v. *B. & D. Bk.,* 16 N. Y., 137; *Halstead* v. *Mayor, etc.,* 5 Barb., 213; 3 N. Y., 430.) Statutes providing aid for private companies from municipal corporations must be literally and strictly complied with, and any disregard or violation of their provisions renders the proceedings *ultra vires* and the bonds void. (*Humboldt Township* v. *Long,* 13

Alb. L. J., 413; *People* v. *Knowles*, 47 N. Y., 418; *People* v. *Smith*, 46 id., 722, 781 ; *People* v. *Hurlbut*, id., 113 ; *People* v. *Spencer*, 55 id., 1; *People* v. *Smith*, id., 135; *Williams* v. *Town of Duanesburgh*, 57 N. Y., 177.) The act of 1871, chapter 809, cannot have the effect to infuse vitality into the proceedings under which the bonds were issued. (*Knox Co.* v. *Aspinwall*, 21 How. [U. S.], 539; *Knox Co.*, v. *Wallace*, id., 547; *Zabriskie* v. *Cl. R. R. Co.*, 23 id., 381; *Amey* v. *Mayor, etc.*, 24 id., 365; *Gelpcke* v. *Dubuque*, 1 Wall., 175; *Bank of Rome* v. *Village of Rome*, 18 N. Y., 38; *Clark* v. *City of Rochester*, 28 id., 605; *People* v. *Batchellor*, 53 id., 128; Cooley on Taxation, 67–69, 76–83, 99, 474, 482–492, 493; A. & A. on Corporations, chap. 1, §§ 32, 33; *Dart. College* v. *Woodward*, 4 Wheat., 688; *Bailey* v. *Mayor, etc.*, 3 Hill, 539; *Towle* v. *Common Council*, 3 Pet., 409; *Lorrillard* v. *Town of Monroe*, 11 N. Y., 392; *Town of Galen* v. *Plankroad Co.*, 27 Barb., 550; *Bank of U. S.* v. *Planters' Bank of Georgia*, 9 Wheat., 907; *Maxmillian* v. *Mayor, etc.*, 62 N. Y., 164; *Lloyd* v. *Mayor, etc.*, 5 id., 374; *Van Horn* v. *Mid. R. R, Co.*, 57 id., 496; *Taylor* v. *Porter*, 4 Hill, 140; *Loan Assoc.* v. *Topeka*, 20 Wall., 655, 663; *Queensbury* v. *Culver*, 19 id., 83; Cooley on Const. Lim., 234; *Attorney-General* v. *Mayor, etc.*, 1 Bligh [N. R.], 312.) The effect of the judgment in *People* v. *Benedict et al.* was to condemn the bonds wherever they may have come by sale or assignment. (*Murray* v. *Ballou*, 1 J. Ch., 565; *Murray* v. *Lylburn*, 2 id., 441; id., 157; 4 id., 48; Waits' Table of Cases, 447, 448; *Hayden* v. *Bucklin*, 9 Paige, 512; 1 Ves. Jr., 249; *Sedgwick* v. *Cleveland*, 7 Paige, 291; *Diamond* v. *Lawrence Co.*, 37 Penn., 353; *Harrington* v. *Slade*, 22 Barb., 161.) The purchasers of these bonds were also affected by the decree in that case, on the ground that a decree binds parties and privies. (*Craig* v. *Ward*, 36 Barb., 377; *Key* v. *Dent*, 14 M. D., 86; *Chapin* v. *Curtis*, 23 Conn., 388; *Adams* v. *Barnes*, 17 Mass., 365; *Campbell* v. *Hall*, 16 N. Y., 575; *Angell* v. *Hollister*, 38 id., 378; Greenl. on Ev., §§ 541–543;

Cooley on Const. Lim., 47.) The act under which the bonds were issued was unconstitutional. (Const., art. 7, § 12; *People* v. *Ingersoll*, 50 N. Y., 1; *People* v. *Fields*, id., 49.

*John J. Linson*, for respondent. The act authorizing the issuing of the bonds was constitutional. (*Bank of Rome* v. *Village of Rome*, 18 N. Y., 35; *People* v. *Mitchell*, 35 id., 551; 45 Barb., 208; *Clark* v. *Rochester*, 28 N. Y., 605; *Starin* v. *Town of Genoa*, 23 id., 439; *Gould* v. *Town of Sterling*, id., 439; *People* v. *Morgan*, 1 T. & C., 101; *Town of Duanesburgh* v. *Jenkins*, 57 N. Y., 177; *Williams* v. *Town of Duanesburgh*, Ct. App., not reported; *Knox Co.* v. *Aspinwall*, 21 How. U. S., 539, 447; 34 id., 365; 23 id., 381; *Queensbury* v. *Culver*, 19 Wal., 83; *R. R. Co.* v. *Otoe*, 16 id., 667; *Penigrove Township* v. *Talcott*, 19 id., 692; *Gelpcke* v. *Dubuque*, id., 220; *Beloit* v. *Morgan*, 7 id., 619.) The bonds in question must be treated as negotiable and *bona fide*, and purchasers of them for value are to receive the same protection that would be awarded to the owner of a negotiable promissory note. (*Bank of Rome* v. *Village of Rome*, 19 N. Y., 20; *Delafield* v. *State of Illinois*, 2 Hill, 177; *Fisher* v. *Morris*, C. & B. Co., 4 Duer, 582; *Hodges* v. *Shatter*, 2 N. Y., 144; 24 Barb., 68; *Culver* v. *Benedict*, 13 Gray., 7; *Edwards on Bills* [2d ed.], 59; *People* v. *Mead*, 24 N. Y., 114; *Knapp* v. *Town of Newtown*, 3 T. & C., 750; *Knox* v. *Aspinwall*, 21 How. [U. S.], 287; *St. Joseph* v. *Rogers*, 16 Wal., 644; *Pine Grove* v. *Talcott*, 19 id., 666; *Gelpcek* v. *Dubuque*, id., 203; *Meyers* v. *Muscatine*, id., 384; *Rogers* v. *Burlinyton*, 3 id., 654; *Evertson* v. *National Bank of Newport*, 1 N. Y. Weekly Dig., 66; *Steinhart* v. *Bohar*, 34 Barb., 436; *Magee* v. *Badger*, 30 id., 246; *Mechanics' Bank* v. *Schuyler*, 7 Cow., 337; *Mitchell* v. *Culver*, 7 id., 337; *Brewster* v. *McCardell*, 8 Wend., 478; *Russell* v. *Ball*, 2 J. R., 50; *Schuyler's Case*, 13 N. Y., 600; *Halstead* v. *Mayor, etc.*, 5 Barb., 218; 3 N. Y., 330.) As the bonds purported on their face to have been issued according to law, the purchaser was not bound to look further for evidence

of a compliance with the conditions of the grant of power to issue them. (*Knox Co.* v. *Aspinwall*, 21 How. U. S., 539; *Miran* v. *Miami Co.*, 2 Black. [U. S.], 724; *St. Joseph* v. *Rogers*, 16 Wal., 644; *People* v. *Mead*, 24 N. Y., 114; *Knapp* v. *Town of Newtown*, 3 T. & C., 750; *Humbolt* v. *Long*, 13 Alb. L. J., 413; *Mercer Co.* v. *Hackett*, 1 Wal., 83; *Lynde* v. *County*, 16 id., 6; *City of Jeffersonville*, 24 How. [U. S.], 287; *Marcy* v. *Oswego*, 2 N. Y. W'kly Dig., 392.) The omission to name the company in the consents of the town of Thompson was not fatal. (1 Kent's Com., 465; *Burton* v. *City of B'klyn*, 15 Barb., 382; *People* v. *Draper*, 15 N. Y., 532; *West* v. *McGuire*, 43 Barb., 200; *Donaldson* v. *Wood*, 22 Wend., 385; Dwarris on Statutes, 552, 557.) The claim that the bonds were exchanged directly for stock would not, if true, be available against a *bona fide* holder. (*People ex rel. Fiedler* v. *Mead*, 24 N. Y., 124; *Town of Queensbury* v. *Culver*, 19 Wal., 82; *Town of Venice* v. *Murdock*, 13 Alb. L. J., 269.) The fact that the power of the Legislature has been unwisely exercised affords no ground for the interference of the judiciary. (*People* v. *Flagg*, 46 N. Y., 406; *Town of Guilford* v. *Sup'rs of Chenango*, 13 id., 143; *People* v. *Denniston*, 23 id., 247; *B'k of Chenango* v. *Brown*, 26 id., 746; *Darlington* v. *Mayor, etc.*, 31 id., 186; *People* v. *Morell*, 21 Wend., 563; *Butler* v. *Palmer*, 1 Hill, 324; *Luke* v. *City of B'klyn*, 43 Barb., 54; *Barto* v. *Himrod*, 8 N. Y., 483; *People* v. *Lawrence*, 54 Barb., 589; *Gray* v. *Brooklyn*, 50 id., 365; *In re Wilson*, 4 City Hall Rec., 47; *Tanner* v. *Albion*, 5 Hill, 121.) When the Legislature has authorized a municipality to do a certain act in a certain manner, a subsequent statute legalizing the act or healing irregularities in its execution is valid. (*Williams* v. *Town of Duanesburgh*, not reported; *People* v. *Mitchell*, 35 N. Y.. 551; *Town of Duanesburgh* v. *Jenkins*, 57 id., 177; 46 Barb., 294; *Rogers* v. *Smith*, 5 How., 475; *People* v. *Williams*, 3 T. & C., 338; *Seamer* v. *Mayor, etc.*, 1 N. Y. W'kly Dig., 425; *Nelson* v. *Mayor, etc.*, 2 id., 313; *Town of Guilford* v. *Sup'rs*, 19 id., 116; *People*

v. *Clark,* 53 Barb., 171; *Brewster* v. *Syracuse,* 19 N. Y., 116; *Thomas* v. *Leland,* 24 Wend., 65; Cooley's Const. Lim., 229; *Randall* v. *Kruger,* 12 Alb. L. J., 99; *Beloit* v. *Morgan,* 7 Wal., 619; *Gelpecke* v. *Dubuque,* 1 id., 220; *Thompson* v. *Lee Co.,* 3 id., 327; *Brown* v. *Town of Canton,* 4 Lans., 418; *Marsh* v. *Town of Little Valley,* 4 T. & C., 116; 13 Alb. L. J., 164; *Northrup* v. *Town of Pittsfield,* 2 T. & C., 105; *Weisenburgh* v. *Green,* 57 Penn. St., 433; *People ex rel. A.,* etc., *R. R. Co.* v. *Mitchell,* 35 N. Y., 551; *People ex rel. Hess* v. *Clark,* 53 Barb., 171.)  The legalizing act was not repugnant to sections 12 and 13 of article 7 of the State Constitution, or to section 6 of article 1. (*Darlington* v. *Mayor,* etc., 31 N. Y. 186; *People* v. *Sup'rs,* etc., 8 id., 327; *People* v. *Hevemeyer,* 4 T. & C., 378; *In re Ford,* 6 Lans., 92; *People* v. *Flagg,* 46 N. Y., 401; *People* v. *Sup'rs Orange Co.,* 17 id., 235; *People* v. *Mayor,* etc., *of Brooklyn,* 4 id., 419; *In re Van Antwerp,* 56 id., 261; *Town of Guilford* v. *Sup'rs,* 13 id., 143; *People* v. *Lawrence,* 41 id., 137; *Gordon* v. *Comes,* 47 id., 608; *Howell* v. *Buffalo,* 37 id., 267; *Brewster* v. *Syracuse,* 19 id., 116; *Davidson* v. *Mayor,* etc., 27 How., 344; *Litchfield* v. *Vernon,* 41 N. Y., 123; *Thomas* v. *Leland,* 24 Wend., 65.)  The proper remedy was by action. (*Marsh* v. *Town of Little Valley,* 4 T. & C., 116; *Northrup* v. *Town of Pittsfield,* 2 id., 108; *Brown* v. *Town of Canton,* 4 Lans., 418.)

RAPALLO, J.  The act under which the bonds in question in this action were issued (Laws of 1868, chap. 553, amended by chap. 96 of Laws of 1869), required, among other things, that before contracting the debt or issuing the bonds, the written consent should be obtained of a majority of the tax-payers, stating the amount of money authorized to be raised, and the railroad company in the stock of which such money should be invested.  The commissioners to be appointed under the act were thereby authorized to borrow the money on the credit of the town.  They were authorized to dispose of the bonds, but for not less than par, and the

money to be thus raised was required to be invested in the stock of such company — meaning evidently the company named in the consent. The act further required that such money be applied to the construction of the railroad, and to no other purpose. These provisions were intended to secure the application to the construction of the road for whose aid the bonds were to be issued, of the full amount of money for which the tax-payers should consent that the credit of the town be pledged, without deduction or discount.

This consent was indispensable to the validity of the bonds. This court decided in the case of the *People* v. *Batchellor* (53 N. Y., 128), that a municipal corporation could not be compelled without its consent, or that of its taxable inhabitants, to become a stockholder in a railway corporation, or to incur a debt in its behalf, and that a mandatory statute requiring it to issue its bonds without such consent, and to invest the proceeds of the sale thereof in the stock of a railroad corporation, was unconstitutional. While the opinion in that case recognizes the power of the Legislature to authorize or enable a town or other municipality, acting through its officers or taxable inhabitants, to contract a debt in aid of the construction of a railroad by a private corporation, it confines the power of the Legislature to conferring such authority, and requires that the contracting of the debt be the voluntary act of the municipality, or that it be done with the consent of the taxable inhabitants, and the case itself is an express adjudication that the Legislature cannot impose such a debt upon the municipality, without such consent.

In the present case no action on the part of the town in its corporate capacity, or on the part of any of its officers, was required by the act, or was taken. The money was to be borrowed, and the bonds issued by commissioners to be appointed in the manner prescribed by the act. These commissioners were in no sense town officers, nor did they represent the town. (*Sheboygan County* v. *Parker*, 3 Wall., 96.) The only warrant for their action was the consent of the

taxable inhabitants required by the act. That consent is the foundation upon which the bonds must rest, and unless the bonds were issued in pursuance of it, they had no validity, and it was beyond the power of the Legislature to impose them as a debt upon the town.

It is found as a fact, in this case, that a consent of a majority of the tax-payers was obtained, which consent stated on its face that it was given in accordance with the provisions of the act of 1868, before referred to, and authorized the commissioners appointed thereunder, for the town of Thompson, to borrow upon the faith and credit of said town the sum of $148,000, and to do and perform the other things necessary to carry into effect the provisions of the said act.

This consent was fatally defective in not naming the railroad company, to the construction of which the fund should be applied. Inasmuch, however, as the consent was sufficiently comprehensive in its terms to embrace the road in question, and the Legislature might legally have authorized it to be in the form in which it was actually given, the validating act of 1871 probably cured the defect in its form. But passing that question, I proceed to the one which is, in my judgment, clearly decisive of this case.

The only authority given to the commissioners by this consent was to proceed according to the provisions of the act of 1868 — that is, to borrow money by disposing of the bonds at not less than par, and to invest the money so raised in the stock of a railroad company. They were not authorized to issue bonds in exchange for the stock of any railroad company. Such a proceeding was wholly unauthorized, and was in substance prohibited by the act referred to in the consent, and would defeat one of its most important objects. As is said by GROVER, J., in the case of *People* v. *Batchellor* : " Under the act of 1867 (which contained the same provision as the act now under consideration), care was taken that the bonds should not be issued for less than their par value in cash; thus there would, in case the town were bonded, be secured for the construction of the road, cash

equal to the principal of the bonds.   If the bonds are deliv-
ered to the company on the receipt of stock, pursuant to the
act of 1870, the bonds become the property of the rail-
road company and may be sold upon the market, much
below par, and thus much less money accrue therefrom for
the construction of the road.   It is obvious that the consent
given does not embrace such a transaction."

The same point was adjudged in *Starin* v. *The Town of
Genoa* (23 N. Y., 439), and *Gould* v. *The Town of Sterling*
(23 id., 459).   And it was held in those cases that no recovery
could be had upon bonds thus issued in violation of the pro-
visions of the act authorizing them.

In the present case it appears, from the findings, that the
$148,000 of bonds authorized by the consent were executed
by the commissioners on the 1st of May, 1869.   None of
them were sold nor was a dollar of money raised upon them
by the commissioners or paid to the company.   They were
all delivered by the commissioners to the railroad company,
between the months of May and October, 1869.   The par-
ticular bond now in suit was thus delivered on the 10th of
August, 1869, to the railroad company, and was purchased
by the plaintiff February 1st, 1870, but from whom does
not appear.   It appears only that he paid full value.

The bonds state upon their face that they are issued under
the act of 1868, referring to it, and are executed by the
commissioners appointed under said act.   They do not pur-
port to be issued by any town officer.   They are payable to
bearer, and recite that they are given " for value received
in the stock of the Monticello and Port Jervis Railway Com-
pany."   It thus appears, on the face of the bonds themselves,
that they were issued not for money, but for stock in viola-
tion of the act and of the consent given thereunder.   No
one taking them could allege ignorance of this important
fact.   Neither could he aver ignorance of the terms of the
authority under which they were issued.   A person dealing
with a corporation, especially in a matter outside of its ordi-
nary purposes, is bound to inquire into the authority of the

agent through whom the transaction is made. Surely he cannot plead ignorance of the terms of the act of the Legislature under which the corporate liability was sought to be created. It is, therefore, unnecessary to discuss the question whether the law in relation to *bona fide* holders of negotiable paper would aid the plaintiff in the present case. These bonds must have been taken on the erroneous assumption that the commissioners had the power under the act to issue them in exchange for stock.

It is claimed, however, that the town, by accepting and retaining the stock received in exchange for the bonds, has ratified their issue and waived any irregularity therein. To this position there are several answers. In the first place, it is not conceded that even the commissioners have retained the stock since the judgment in the case of *People ex rel. Kilbourne* v. *Benedict*, entered November, 1872, and before the commencement of this action, which, as is found by the referee, stands unappealed from and unreversed, adjudging that all of the bonds were issued by the commissioners, without authority in law, and were void, and that the certificates of stock issued by the railroad company in exchange for said bonds should be delivered up and canceled. To that action the town of Thompson, the railroad company and the commissioners holding the stock were parties, with others. Even if the commissioners still hold physical possession of the certificates of stock, it is not easy to comprehend how, in the face of that judgment, they or the town could claim any benefit therefrom.

Secondly. The commissioners are not the town; they are not officers of the town, nor representatives appointed by it; they are mere instruments created by the Legislature to carry into effect the provisions of the act of 1868, and have no powers other than those contained in that act. No action on the part of the town was contemplated by the act of 1868, except the consent of the tax-payers to the issue of the bonds, and none other was had. The town is not, therefore, bound by the acts of the commissioners beyond or in contravention

of the act of 1868, and the consent given thereunder; and thirdly, if they were officers of the town, or if officers of the town had acted in the matter, it was no part of their general duties, and they had no power to contract this debt, except in the manner prescribed in the act, and could not do by what is attempted to be called ratification of their own acts that which they had no power to do directly. If they had become illegally possessed of stock, they could be compelled to give it up, and that is all. They could not impose a debt to be paid by taxation by wrongfully retaining the stock.

It appears to me quite clear that, under the adjudications already had in this State, these bonds have no validity, and no recovery can be had thereon unless the act of 1871, chapter 809, gives them validity.

By that act it is enacted that the acts of the commissioners in issuing the bonds and exchanging them for the stock of the company are ratified and confirmed, and that no bond purporting to have been issued under the act of 1868, and held by any person in good faith, or for a valuable consideration, shall be void or voidable by reason of any defect in the consents of tax-payers, or by reason of such consents not stating the name of the railroad company, etc., etc. At the time of the passage of this act the plaintiff was the holder of the bond in question. It was void for the reasons already stated, and constituted no debt against the defendant. But it is claimed on the part of the plaintiff that this act made it a debt against the town.

I think this was beyond the power of the Legislature, and was precisely what it was decided in the case of *People* v. *Batchellor*, could not be done. The bond not having been originally issued in conformity with the consent of the tax-payers, and that being the only action on the part of the town toward the contraction of the debt, the Legislature had no power to validate that bond unless they had power to authorize or direct the commissioners originally to contract the debt without any consent or action on the part of the town. This, as we decided in the Batchellor case, they

had no power to do, and it necessarily follows that this confirmatory act cannot aid the plaintiff's case. It was not, in this respect, merely curative of an irregularity in the exercise of a power which had been conferred, but it undertook to give validity to an act which had been done without the consent of the town, and in violation of law, and which the Legislature had no power to authorize to be done without such consent.

Another point is insisted on by the defendant on this branch of the case, viz.: That the act of 1871 contains a proviso, that no action pending at the time of its passage shall be in any way affected by it, but may proceed to judgment as if the act had not been passed. The action of *People ex rel. Kilbourne* v. *Benedict*, was then pending. That action was commenced before the bond in question was purchased by the plaintiff or had passed from the company, and it is claimed that the plaintiff purchased subject to this *lis pendens* and is bound by the judgment, and that the act of 1871 saves this judgment. I have not discussed this point, nor various other points taken on the part of the defendant, as I think the grounds before stated sufficient to dispose of the case.

The judgment should be reversed and a new trial ordered, costs to abide the event.

CHURCH, Ch. J., ALLEN and FOLGER, JJ., concur. ALLEN and FOLGER are also for reversal, on the ground that the plaintiff purchasing the bond *pedente lite*, was estopped by the judgment in *People* v. *Benedict*, setting aside and annulling the bonds, full effect being given to that judgment as against every one by the act of 1871.

ANDREWS, MILLER and EARL, JJ., dissent.

Judgment reversed.