544 PEOPLE ex rel. NAT. EXCH. BANK *v.* STUPP.

Fifth Department, October Term, 1888.

THE PEOPLE OF THE STATE OF NEW YORK ex rel.
THE NATIONAL EXCHANGE BANK OF AUBURN,
Appellant, *v.* CHARLES J. STUPP, as City Treasurer
of the City of Auburn, Respondent.

*Levy of taxes for the payment of interest on city bonds issued in aid of a railroad company — the money must be paid to the railroad commissioners — 1866, chap. 433, sec. 4 — the supervisors cannot make, nor can the commissioners indorse and transfer, a negotiable bill of exchange on the city treasurer for the amount.*

In December, 1887, the ten supervisors elected from the city of Auburn drew upon the city treasurer an order, of which the following is a copy:

"$21,550. Auburn, N. Y., *Dec.* 27, 1887.

"City treasurer of the city of Auburn, on or before February 8, 1888, pay to railroad commissioners of city of Auburn, or order, twenty-one thousand five hundred and fifty dollars."

The order was delivered to the commissioners, two of whom, as such, subscribed their names to an indorsement, making it payable to the First National Bank of Auburn for deposit, and delivered it so indorsed to the cashier of that bank, who afterwards, on January 12, 1888, indorsed and transferred the order to the National Exchange Bank of Auburn. The First National Bank suspended payment January 23, 1888. The city treasurer having refused, after its maturity, to pay the amount of the order to the National Exchange Bank, a motion was made by it for a writ of *mandamus* requiring such payment to be made.

The sum of money mentioned in the order was levied by the board of supervisors of Cayuga county in December, 1887, to pay the interest, which became due in 1888, upon certain bonds of the city which had been issued in aid of the construction of a railroad, and was embraced in the moneys which, by the warrants then issued by the board to the city treasurer, he was authorized and directed to collect.

The statute, pursuant to which the amount of money in question was issued, directed that when collected it was to be paid to the railroad commissioners, while the warrants issued to the city treasurer directed payment, to the supervisors of the city of Auburn, of the sums mentioned in them.

*Held,* that the commissioners were the proper depositary of the money, and that the direction contained in the warrants did not have the legal effect of diverting the fund from its legitimate destination.

That, as the drawers of the order were not entitled to the money, and as their order to any person other than the commissioners would not entitle the payee to it, the order did not create an indebtedness on the part of the city to the commissioners.

That the city members of the board of supervisors had no authority to make, nor had the commissioners authority to transfer, by indorsement, a negotiable bill of exchange, nor was their power to make and transfer it supported by presumption, as all their powers were given by statute.

That the order, as indorsed and delivered to the First National Bank, gave to the bank no title to the draft, or to the fund to be covered by it, but, at most, was a mere authority to receive the money from the treasurer, when it should be received or collected by him, for deposit in behalf of the commissioners and for their use. That an order denying the motion for a writ of *mandamus* should be affirmed.

APPEAL from an order of the Monroe Special Term of February 27, 1888, entered in Cayuga county denying a motion for a writ of *mandamus.*

The ten supervisors of the city of Auburn drew upon the city treasurer an order of which the following is a copy :

" $21,550.                    AUBURN, N. Y., *Dec.* 27, 1887.

" City treasurer of the city of Auburn, on or before February 8th, 1888, pay to railroad commissioners of city of Auburn, or order, twenty-one thousand five hundred and fifty dollars."

To which their names as supervisors of Auburn were subscribed. They afterwards delivered the order to the railroad commissioners, two of whom, as such, subscribed their names to an indorsement upon the order as follows : " Pay First National Bank of Auburn for deposit," and delivered it so indorsed to the cashier of the First National Bank of Auburn, who afterwards, on January 12, 1888, indorsed and transferred the order to the National Exchange Bank of Auburn.   The First National Bank suspended payment January 23, 1888, and on the refusal of the city treasurer after its maturity to pay the amount of the order to the National Exchange Bank, a motion in its behalf was made for a writ of *mandamus* requiring such payment to be made.   This amount was levied by the board of supervisors of the county of Cayuga in December, 1887, and embraced in the moneys which by the warrants then issued by the board to the city treasurer, he was authorized and directed to collect.   And this sum was so levied to pay the interest which became due in 1888, upon certain bonds of the city which had been issued in aid of the construction of the Southern Central Railroad pursuant to the Laws of 1866 (chap. 433).

*John D. Teller*, for the appellant.

*James C. Smith*, for the respondent.

BRADLEY, J :

The question presented is whether the official duty of the treasurer of the city of Auburn required him to pay the amount of the order or draft to the relator. If it clearly appeared that such was his legal duty as such officer, the relator was entitled to a peremptory writ of *mandamus*, otherwise not. The statute, pursuant to which the amount of money in question was levied upon the taxable property of the city of Auburn, directed that when collected it be paid to the railroad commissioners, and by them applied to the payment of the interest upon the bonds issued pursuant to the same statute. (Laws of 1866, chap. 433, § 4.) By this provision of the act it evidently was designed that the moneys collected for such purpose should be paid to those commissioners by the collector or officer who executed the warrants of the board of supervisors in the city. And to such extent and for such purpose the form prescribed by the Revised Statutes for such warrants was qualified. (*People ex rel. Martin* v. *Brown*, 55 N. Y., 180.

This was not observed in preparing the warrants, but those issued to the city treasurer in 1887, in terms, directed payment to the supervisors of the city of the sums mentioned in them " for town charges assessed" on the wards respectively. These sums, in the aggregate, amounted to $38,799.83, in which was included the amount levied for the payment of the interest upon the bonds before mentioned. These facts have no substantial importance as relates to the fund in question. While they may account somewhat for the method employed for the payment of the money to the railroad commissioners, the direction in the warrants covering it did not have the legal effect to divert the money from its legitimate destination. Those commissioners were the proper depositary of it; but, inasmuch as the direction of the warrants to the city treasurer was to pay it to the supervisors of the city, he may have required that it be paid to those commissioners through the order of such supervisors. The result would, in practical effect, be the same as if the payment were made, without their intervention, to the commissioners. The drawers of the order were not entitled to this money, nor would their order to any person other than the commissioners entitle the payee to it. The right to the fund depended upon and was given by the statute. The commissioners

PEOPLE ex rel. NAT. EXCH. BANK v. STUPP.    547

Fifth Department, October Term, 1888.

were the constituted authority to receive and disburse it, as directed by the statute. They were officers, charged with a defined duty. (*Horton* v. *Town of Thompson*, 71 N. Y., 513.)

While the bonds so issued and outstanding represented a debt of the city, the railroad commissioners had no power to borrow money to pay any portion of the principal or interest of them and charge the city with liability upon their notes for it. The question arises as to the effect of the order or draft made by the city supervisors and indorsed as it was by the commissioners. It had the nature of authority, so far as those supervisors could give it to the treasurer, to pay that amount of money to the commissioners. It could create no indebtedness of the city to them. Their right as such to receive the money was dependent upon its collection through the means provided for the levy and collection of taxes. This was a duty imposed upon the board of supervisors of the county. And while, as an incident to the power, such as they may have, to disburse money, the supervisors of the city might draw orders upon the treasurer to parties entitled to the money coming within that which they have the power, if any they have, to disburse; but they are powerless to create any debt against the city. They are members of the board of supervisors of the county, and have the powers of supervisors of towns. (Laws 1879, chap. 53, § 43.) Their powers are only those conferred by the statute, and such as are incident to their exercise.

It is contended, by the learned counsel for the relator, that the indorsement of this draft and the delivery of it by the commissioners to the First National Bank, vested title to it in the bank, and, by its indorsement and transfer by the cashier of that bank to the relator, the latter took title to it. This proposition is dependent upon the fact that the draft was negotiable paper, and, as a consequence, transferable by indorsement and delivery, like commercial paper. This has the form of a negotiable bill of exchange. The question is, therefore, one of power in the city members of the supervisors of the county to make and of the commissioners to transfer, by indorsement, such paper, and thus create liability of the city to any holder in good faith, who may have taken it in regular course of business. The power of those supervisors and commissioners, as such, to make and transfer such paper by indorsement

548 PEOPLE ex rel. NAT. EXCH. BANK *v.* STUPP.

FIFTH DEPARTMENT, OCTOBER TERM, 1888.

is not supported by presumption, as the fact is recognized that all their powers are given by statute, and they have no such authority. (*Chemung Canal Bank* v. *Supervisors,* 5 Denio, 517; *Barker* v. *Loomis,* 6 Hill, 463; *Parker* v. *Board Suprs.,* 106 N. Y., 392.)

While it may be assumed that the First National Bank took, by the indorsement made upon the order by the commissioners, authority to receive from the treasurer the amount mentioned in it for deposit to their credit, the bank took no title to the draft as such by the indorsement. The deposit for safety and convenience of funds for current uses in banks has the support of the customary method employed in the transaction of business. This had been done by the commissioners in previous years. The draft and the indorsement of it could have no force except as on a particular fund, the omission to specify which in it, in view of the restricted power of those officers, added nothing in effect to the character of the paper, which it would have had if the fund had been mentioned in it. In that event it would have lacked the form of negotiable paper. Nor did it operate as a transfer of the fund. This the commissioners had no power to make, as it was by statute devoted to a specific purpose from which they had no authority to divert it. It would, therefore, seem that the order, as indorsed and delivered to the First National Bank, gave to it no title to the draft or to the fund intended to be covered by it, but, at most, was mere authority to receive from the treasurer, when it should be received or collected by him, the money for deposit in behalf of the commissioners and for their use. And it is unnecessary here to determine whether, as between the bank and the commissioners, the relation of creditor and debtor would be produced on the receipt and deposit by it of the amount to their credit, as would ordinarily arise by placing funds to the credit of depositors. It was, we think, not within the power, apparent or real, of the commissioners to lend the money. Their duty was to disburse it for the specific purpose for which it was raised, and in the meantime to preserve it within their control. The official duty of the commissioners, in respect to such fund, was a trust which they, as such officers, were required to execute, of which the bank was advised, and the bank was not, any more than were they, permitted to treat the money or deal with it in such manner as to deny its application to the purposes of the trust. And so far as necessary

PEOPLE ex rel. NAT. EXCH. BANK *v.* STUPP. 549

Fifth Department, October Term, 1888.

for the protection of it against diversion, and for the purpose of such protection, the bank would be chargeable as trustee of the fund until drawn from it by and in the name of the commissioners. (*Van Alen* v. *Am. Nat. Bank*, 52 N. Y., 1; *Baker* v. *N. Y. Nat. Ex. Bank*, 100 id., 31.)

The cases cited to support the contention that this draft was negotiable in its character and legal effect have relation to those in which the power exists in the officers of corporations, municipal and otherwise, and persons to, in that manner, represent or create liability. In *Kelley* v. *Mayor*, etc. (4 Hill, 263), the draft was issued to the party entitled to payment of a debt contracted by the city of Brooklyn, in the course of its business, and was drawn upon the treasurer pursuant to authority furnished by the city charter. The power of a corporation to incur liability for property purchased, or for services performed, takes with it the duty to pay, and the right, through the constituted authorities, to represent such liability, by draft upon its treasurer, which may be effectual to support a claim for the amount in behalf of its holder, to whom it has been duly transferred. Such was the doctrine of the case in *Ketchum* v. *City of Buffalo* (14 N. Y., 356), although there the debt was represented by a bond of the city. But when a draft is not, by its terms, drawn upon a particular fund, liability upon it, as such, of the drawee depends upon his acceptance. (*Brill* v. *Tuttle*, 81 N. Y., 454; *Attorney General* v. *Continental Life Ins. Co.*, 71 id., 325.) The draft in question did not therefore, in terms, import the transfer of the fund, and, as it was not duly accepted by the treasurer, he is not apparently charged upon it as a bill of exchange or draft, but the claim made by the relator must depend upon the question whether that officer is charged with the duty to pay to it the amount of the draft. For the purposes of the question presented here, we are unable to hold that the claim of the relater has the support of such duty of the city treasurer.

It may be observed that the right to a peremptory writ of *mandamus* depends upon a clear legal right to the relief sought by it. (*People ex rel. Mott* v. *Board of Suprs.*, 64 N. Y., 600; *People ex rel. Slavin* v. *Wendell*, 71 id., 171.) And when it rests in any substantial doubt, or the facts upon which it depends are in any essential respect controverted by affidavit, such writ will not be

allowed to issue. (*People ex rel. Savings Bank* v. *Cromwell*, 102 N. Y., 477.)

Whether any equities, in behalf of the relator, may arise from payment by it of the amount of the draft to the First National Bank, and the placing of such amount to the credit of the commissioners by the latter bank, if such are the facts, is a question not here for consideration, and would not be if the fact of the credit of the amount by that bank was not controverted by the affidavits on the part of the defendant. These views lead to the conclusion that the relator was not entitled to a peremptory writ, and that an alternative writ of *mandamus*, which its counsel suggests, should in that event issue, we think, upon the facts appearing, is not available for the purposes of any relief to the relator.

The order should be affirmed.

BARKER, P. J.; HAIGHT and DWIGHT, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.